UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA SANCHEZ, a/k/a MARIA SANCHEZ-ABARCA, and JESUS URIOSTEGUI, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 11 CV 6820 |
| v. | ) ) | Judge Joan H. Lefkow |
| ONEWEST BANK, FSB, and INDYMAC BANK, FSB, | ) ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

Plaintiffs Maria Sanchez and Jesus Uriostegui bring this *pro se* civil action against OneWest Bank, FSB and IndyMac Bank, FSB. Plaintiffs allege numerous claims arising from the modification of their mortgage loan and subsequent foreclosure on their property. Before the court is OneWest's motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] For the reasons stated below, OneWest's motion [#18] will be granted in part and denied in part.

**LEGAL STANDARD**

Rule 12(b)(1) provides that a case will be dismissed if the court lacks the authority to hear and decide the dispute. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *See United Phosphorous, Ltd*. v. *Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc). If subject matter jurisdiction

---

[1] In its motion to dismiss, OneWest Bank represents that OneWest and IndyMac are now the same entity.

is not evident from the face of the complaint, the court analyzes the motion to dismiss under Rule 12(b)(1) as any other motion to dismiss and assumes for purposes of the motion that the allegations in the complaint are true. *Id*. Where, as here, "the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other materials to support the motion." *Id*.; *see also Sapperstein* v. *Hager*, 188 F.3d 852, 855–56 (7th Cir. 1999); *Long* v. *Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The court may weigh the evidence to determine whether jurisdiction has been established. *United Phosphorous*, 322 F.3d at 946. The burden of proof is on the party asserting jurisdiction. *Id*.

## FACTS[2]

Plaintiffs are the former owners of the property at 2547 North Neva Avenue in Chicago. (Def.'s Ex. B.) They obtained their mortgage from IndyMac and, at some point, were placed on a trial loan modification plan. (Am. Compl. at 1.) Plaintiffs completed three payments, after which IndyMac informed them that they would receive permanent loan modification documents. (*Id*.) Plaintiffs continued to make payments on their mortgage for the next thirteen months. (*Id*. at 2.) During this time period, plaintiffs contacted IndyMac's loss mitigation department and were instructed to continue making payments until the final loan modification documents were mailed. (*Id*. at 2.)

---

[2] Unless otherwise noted, the following facts are taken from plaintiffs' amended complaint and are presumed true for the purpose of resolving the pending motion. The court notes that plaintiffs' amended complaint lacks many details that were included in their in the original complaint. An amended complaint supersedes an original complaint, however, and therefore facts from the original complaint not incorporated into the amended complaint cannot be considered in ruling on OneWest's motion to dismiss. *See*, *e.g.*, *Kelley* v. *Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998).

Also during this time period, IndyMac initiated foreclosure proceedings in the Circuit Court of Cook County. The Circuit Court entered a foreclosure judgment on December 18, 2009. (Def.'s Ex. A.) The judgment lists "OneWest Bank, FSB" as the plaintiff in the foreclosure proceedings. (*Id*.) On March 11, 2011, the Circuit Court entered an order approving the sale of the property and distribution and order for possession of deed. (Def.'s Ex. B.) The approval order states that the successful bidder on the property was "OneWest Bank, FSB, or Assignee Federal Home Loan Mortgage Corporation." (*Id*.) The sheriff was authorized to evict plaintiffs from the property. (*Id*.)

When plaintiffs learned of the foreclosure proceedings, they contacted IndyMac. (Am. Comp. at 2.) IndyMac told them that it had a legal right to initiate foreclosure proceedings even though plaintiffs were making payments under a trial loan modification plan. (*Id*.) Plaintiffs also sent a written request to IndyMac that asked for the name of the investor in their mortgage loan. (*Id*. at 3.) IndyMac refused to disclose the identity of the investor. (*Id*.) Plaintiffs learned from publicly-available documents that the Federal Home Loan Mortgage corporation, or Freddie Mac, was the undisclosed investor. (*Id*.)

## ANALYSIS

OneWest argues that this court lacks subject matter jurisdiction over plaintiffs' claims under the *Rooker-Feldman* doctrine. The doctrine is derived from *Rooker* v. *Fidelity Trust Company*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). The doctrine stands for the principle that only the Supreme Court has appellate jurisdiction to reverse or modify a state court judgment; lower federal courts lack subject matter jurisdiction to review

3

state court decisions. *See Holt* v. *Lake Cnty. Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005) (citing *Rooker*, 263 U.S. at 416; *Feldman*, 460 U.S. at 482). The *Rooker-Feldman* doctrine therefore bars both direct and indirect review of a state court judgment.

The fundamental issue in a *Rooker-Feldman* analysis is whether the injury alleged is distinct from the state court judgment. In general, if the plaintiff's alleged injury resulted from the state court judgment itself, the doctrine bars such a claim. *See Beth-El All Nations Church* v. *City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007). The doctrine also bars "an action in federal court that alleges an injury 'inextricably intertwined' with a state court decision, such that success in federal court would require overturning the state court decision." *Epps* v. *Creditnet, Inc.*, 320 F.3d 756, 759 (7th Cir. 2003). In determining whether a claim is "inextricably intertwined," the "crucial point is whether 'the district court is in essence being called upon to review the state-court decision.'" *Ritter* v. *Ross*, 992 F.2d 750, 754 (7th Cir. 1993) (quoting *Feldman,* 460 U.S. at 483–84 n.16).

If a claim is "inextricably intertwined" with a state court decision, the court must then determine whether the plaintiff had a "reasonable opportunity to raise the issue in the state court proceedings." *Taylor* v. *Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004). To establish that there was no reasonable opportunity to raise an issue in state court, a plaintiff must point to "some factor independent of the actions of the opposing party that precluded the litigants from raising their federal claims during the state court proceedings." *Long*, 182 F.3d at 558.[3] A

---

[3] Typically, this intervening factor must be an action taken by the state court or the state court procedures themselves. *Long*, 182 F.3d at 558.

plaintiff may then proceed in federal court if she can make this showing. *Taylor*, 374 F.3d at 533.

If, on the other hand, the claimed injury is independent of the state-court judgment, or if the federal claim is based on "a prior injury that a state court failed to remedy," *Rooker-Feldman* does not bar the claim. *See Centres, Inc.* v. *Town of Brookfield, Wis.*, 148 F.3d 699, 701–02 (7th Cir. 1998). Courts must construe the doctrine narrowly, confining its application to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).

Plaintiffs' complaint is lacking in detail, making it difficult to analyze their claims. Plaintiffs state that OneWest and IndyMac "set out to use deceptive practices in the way of informing the Plaintiff[s] to continue making the Trial Period Payments and await the permanent loan modification documents at the same time . . . initiating foreclosure proceedings . . . while promising the plaintiff[s] that the permanent documents would be forthcoming." (Am. Compl. at 2.) They assert that OneWest and IndyMac thereby violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)(1)(B), the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, and that the banks' actions amounted to intentional infliction of emotional distress, deceptive trade practices, fraud, unfair lending practices, and breach of good faith. Plaintiffs also allege that defendants violated their right to due process.

Plaintiffs' claim under RESPA is independent from the state court judgment of foreclosure. RESPA requires a loan servicer of federally related mortgage loans to respond to

"qualified written requests" for information from a borrower. *See* 12 U.S.C. § 2605(e). A qualified written request is defined, in relevant part, as written correspondence that enables the servicer to identify the name and account of the borrower and "provides sufficient detail to the servicer regarding . . . information sought by the borrower." *Id*. § 2605(e)(1)(B). Plaintiffs allege that IndyMac refused to disclose the identity of the investor in their mortgage after they filed a qualified written request. This allegation is sufficient to state a claim for a violation of RESPA. *See Vician* v. *Wells Fargo Home Mortg.*, No. 05 CV 144, 2006 WL 694740, at *3 (N.D. Ind. Mar. 16, 2006) (allegation that plaintiff sent a written request to a servicer and did not receive a response was sufficient to state a claim under RESPA). Plaintiffs may be entitled to "actual damages . . . as a result of" defendants' failure to comply with RESPA's disclosure requirements. *See* 12 U.S.C. § 2605(e)(1)(B). The court cannot conclude, at this stage in the proceedings, that a determination of plaintiffs' damages would require review or rejection of the state court foreclosure judgment. *See Crawford* v. *Countrywide Home Loans Inc.*, Nos. 09 CV 247, 09 CV 295, 2011 WL 3875642, at *7–8 (N.D. Ind. Aug. 31, 2011), *aff'd in relevant part* 647 F.3d 642, 647 (2011) (RESPA claim did not attack underlying state court judgment and was not barred by *Rooker-Feldman*). Therefore OneWest's motion to dismiss will be denied as to plaintiffs' RESPA claim.[4]

---

[4] OneWest's memorandum of law, which is two and a half pages long, does not address the substance of plaintiffs' claims. Neither of the two cases cited by OneWest indicates that plaintiffs' RESPA claim is barred by the *Rooker-Feldman* doctrine. In *Crawford*, the Seventh Circuit affirmed the district court's conclusion that it had subject matter jurisdiction over the plaintiffs' RESPA claim. *See* 647 F.3d at 647; 2011 WL 3875642, at *7–8. In *Taylor* v. *Federal National Mortgage Association*, 374 F.3d 529 (7th Cir. 2004), the plaintiff claimed that a fraud had been committed on the state court which entered the foreclosure judgment and requested recovery of her home as a form of relief. The court of appeals concluded that her claim constituted a direct request to vacate the state court judgment and was therefore barred by *Rooker-Feldman*. *Id*. at 533. Plaintiffs' RESPA claim, in contrast, is based on a statutory

**(continued...)**

OneWest's motion to dismiss will be granted as to plaintiffs' due process claim, however. The due process clause does not protect plaintiffs from IndyMac's or OneWest's conduct as private, non-state actors. *See, e.g.*, *United States* v. *Morrison*, 529 U.S. 598, 620–21, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000) ("[The Fourteenth Amendment, by its very terms, prohibits only state action. . . . 'That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.'" (quoting *Shelly* v. *Kraemer*, 334 U.S. 1, 13 & n.12, 68 S. Ct. 836, 92 L. Ed 1161 (1948))); *see also Daw* v. *Peoples Bank & Trust Co.*, 5 F. App'x 504, 505 (7th Cir. 2001) (citing *Morrison* in support of the conclusion that plaintiff could not claim that bank's assignment of note and mortgage without notice constituted a due process violation). To the extent that plaintiffs claim that the state court foreclosure proceedings deprived them of their property without due process of law, such a claim is inextricably intertwined with the state court foreclosure judgment and is barred by *Rooker-Feldman*. *See Long*, 182 F.3d at 556–57 (due process claim could not be considered separately from eviction order entered against plaintiff); *Garry* v. *Geils*, 82 F.3d 1362, 1368–69 (7th Cir. 1996) (due process claim could not be considered independently from a state court condemnation award).[5]

Plaintiffs' remaining claims cannot be meaningfully assessed because they are supported only minimally, if at all, by the allegations in the complaint. After reviewing the allegations in plaintiffs' complaint, the court has concluded that most of plaintiffs' claims are not supported by facts sufficient to give rise to a plausible inference that plaintiffs are entitled to relief.

---

[4](...continued)
remedy that can be considered independently from the state court judgment.

[5] *Rooker-Feldman* would not bar the assertion of such a claim if plaintiffs were denied a "reasonable opportunity" to raise the issue in state court. *See Long*, 182 F.3d at 557–58. Plaintiffs, however, have not cited any lack of opportunity that prevented them from doing so.

Nevertheless, it appears that the claims are not barred by *Rooker-Feldman* because they allege grounds for relief independent of the state court judgment and are premised on facts and issues that would not require review of the foreclosure proceeding. *See Crawford*, 647 F.3d at 647 (allowing claims to proceed because relief could be granted "without necessarily impugning the state court's judgment"). Therefore the court will provide plaintiffs with an opportunity to respond to or cure the defects noted below.

HOEPA was passed in 1994 as an amendment to the Truth in Lending Act and establishes disclosure requirements and rules to govern "alternative mortgages" that require high rates or fees. *See Clark* v. *Fairbanks Corp.*, No. 00 C 7778, 2003 WL 21277126, at *2 (N.D. Ill. June 2, 2003). HOEPA applies only to second or subordinate residential mortgages with specified annual percentage rates or fees. *See* 15 U.S.C. § 1602(bb)(1); *Cunningham* v. *Equicredit Corp.*, 256 F. Supp. 2d 785, 792–93 (N.D. Ill. 2003). Plaintiffs, in their complaint, allege that defendants violated 15 U.S.C. § 1639, which sets forth disclosure requirements and limitations on the terms that may be included in certain mortgages. The required disclosures include the annual percentage rate, the fact that the borrower is not required to complete the loan agreement, and the fact that the borrower's failure to meet her obligations under the loan could result in the loss of her home. *See* 15 U.S.C. § 1639(a). Section 1639 also prohibits creditors from including prepayment penalties, higher interest rates after default, balloon payments, negative amortization, or prepaid payment terms in a mortgage. S*ee id.* § 1639(c)–(g). Nor may a creditor "extend[] credit to consumers . . . without regard to the consumers' repayment ability." *See id.* § 1639(h). Plaintiffs have not alleged any facts demonstrating that defendants failed to

meet the requirements of section 1639 or, more crucially, that their loan modification plan was subject to HOEPA. Therefore plaintiffs' HOEPA claims cannot succeed as pleaded.

In order to state a claim for intentional infliction of emotional distress, plaintiffs must allege that defendants' conduct was "extreme and outrageous," that defendants intended to inflict severe emotional distress or knew that there was at least a high probability that their conduct would inflict severe emotional distress, and that defendants' conduct caused severe emotional distress. *See, e.g.*, *Cook* v. *Winfrey*, 141 F.3d 322, 330 (7th Cir. 1998); *McGrath* v. *Fahey*, 533 N.E. 2d 806, 809, 126 Ill. 2d 78, 127 Ill. Dec. 724 (1988).[6] "[T]he tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath*, 533 N.E.2d. at 809 (quoting *Restatement (Second) of Torts* § 46, cmt. d, at 73 (1965)). Conduct is considered extreme and outrageous only if it is "so extreme as to go beyond all possible bounds of decency" and would "be regarded as intolerable in a civilized community." *Kolegas* v. *Heftel Broad. Corp.*, 607 N.E.2d 201, 211, 154 Ill. 2d 1, 180 Ill. Dec. 307 (1992) (quoting *Restatement (Second) of Torts* § 46, cmt. d, at 73). Plaintiffs allege that IndyMac initiated foreclosure proceedings while they were participating in a loan modification trial period and then did not respond to their written request for the name of the investor in their mortgage. They do not allege that IndyMac threatened them, concealed the foreclosure proceedings from them, or provided false or misleading information during the course of the loan modification trial period.

---

[6] Neither party addresses choice of law with respect to plaintiffs' state law claims. Federal courts, reasoning by analogy to diversity cases, apply the choice of law rules of the forum state to supplemental state law claims. *Baltimore Orioles, Inc.* v. *Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir. 1986). Under Illinois law, a choice of law analysis is only required if there is a conflict of laws and the difference will affect the outcome of the case. *Townsend* v. *Sears, Roebuck & Co.*, 879 N.E.2d 893, 899, 227 Ill. 2d 147, 316 Ill. Dec. 505 (2007). The facts alleged by plaintiffs do not indicate that the law of any other state would apply to their state law claims. The court therefore applies Illinois law.

Plaintiffs do not deny that they were in default on their mortgage loan. On these facts, IndyMac's actions do not rise to the level of extreme or outrageous conduct. Plaintiffs have also failed to allege facts that give rise to the inference that IndyMac's actions caused "severe" emotional distress. Therefore they have not stated a claim for intentional infliction of emotional distress.

The basis for plaintiffs' deceptive trade practices claim is unclear. Plaintiffs do not allege that IndyMac or OneWest made false or misleading representations. Rather, the gravamen of their complaint appears to be that IndyMac failed to give advance notice before it initiated foreclosure proceedings and then refused to provide the name of the investor in plaintiffs' mortgage.[7] These allegations are insufficient to state a claim under the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et. seq. See Lynch Ford, Inc.* v. *Ford Motor Co., Inc.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997) (in order to state a claim for violation of the Act, complaint must allege that defendant made a representation that was false, misleading, or deceptive). Moreover, the Act does not allow recovery of money damages. *See Greisz* v. *Household Bank*, 8 F. Supp. 2d. 1031, 1044 (N.D. Ill. 2008); 815 Ill. Comp. Stat. 510/3. It only provides for injunctive relief when a plaintiff can prove that he would be harmed by the defendants' conduct in the future. *Greisz*, 8 F. Supp. 2d at 1044; *see also* 815 Ill. Comp. Stat. 510/3. Plaintiffs have not requested injunctive relief and do not allege that they will continue to be harmed by OneWest's or IndyMac's conduct. Thus plaintiffs do not appear to have a viable deceptive trade practices claim.

---

[7] To the extent that plaintiffs seek to attack the legitimacy of the state court foreclosure proceedings, their claim would be barred by *Rooker-Feldman*.

Plaintiffs allege generally that OneWest and IndyMac engaged in fraud. Allegations of fraud are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that the plaintiff must plead the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Plaintiffs' amended complaint lacks the detail required by Rule 9(b) and the facts therein do not give rise to the inference that OneWest or IndyMac engaged in fraud.[8]

Plaintiffs also assert, without elaboration, that defendants engaged in "unfair lending practices." It appears that plaintiffs are focused on the way in which IndyMac carried out its loan modification plan, rather than contesting the fairness of the terms of their original mortgage. The court is not aware of any Illinois common law cause of action relating to unfair lending practices that would support a claim based on the facts alleged in plaintiffs' complaint. To the extent that plaintiffs' allegation of unfair lending practices sounds in fraud, as discussed *supra* they have failed to meet the heightened pleading standard for a fraud claim. As for statutory remedies, HOEPA is clearly aimed at curtailing abusive lending practices in the residential mortgage market. *See Clark*, 2003 WL 21277126, at *2. As discussed above, however, plaintiffs have not alleged facts sufficient to give rise to the inference that defendants violated HOEPA's requirements.

Finally, Illinois law does not recognize an independent tort for breach of the implied duty of good faith and fair dealing arising from a mortgagor-mortgagee relationship. *See Johnstone* v.

---

[8] If plaintiffs choose to file an amended complaint, they must allege facts showing that any fraud is distinct from defendants' conduct in the foreclosure proceeding. *See Taylor*, 373 F.3d at 533 (where plaintiff claimed that creditors had committed fraud on the court in bringing a foreclosure action, court lacked subject matter jurisdiction to decide the claim pursuant to *Rooker-Feldman*).

*Bank of America, N.A.*, 173 F. Supp. 2d 809, 817 (N.D. Ill. 2001) (citing *Voyles* v. *Sandia Mortg. Corp.*, 751 N.E. 2d 1126, 1131–32, 196 Ill. 2d 288, 256 Ill. Dec. 289 (2001)). Breach of the duty of good faith and fair dealing is only a basis for a breach of contract action. *La Salle Bank Nat'l Assoc.* v. *Paramont Properties*, 588 F. Supp. 2d 840, 853 (N.D. Ill. 2008); *see also Seip* v. *Rogers Raw Materials Fund, L.P.*, 948 N.E. 2d 628, 637-38, 408 Ill. App. 3d 434, 350 Ill. Dec. 348 (2011) ("The duty . . . is not an independent source of duties for the parties to a contract, and is used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions." (internal quotation marks omitted, citation omitted)). Plaintiffs do not allege that defendants breached the terms of their mortgage loan agreement or their loan modification plan. Therefore, plaintiffs cannot assert a claim for breach of the implied duty of good faith and fair dealing.

Accordingly, it appears that plaintiffs are not entitled to relief under HOEPA or on their claims for intentional infliction of emotional distress, deceptive trade practices, fraud, unfair lending practices, or breach of good faith and fair dealing. Based on the facts as pleaded, the court is not persuaded that an amended complaint would cure any defects in pleading. Plaintiffs may show cause as to why these claims, as pleaded, should not be dismissed with prejudice. *See Ricketts* v. *Midwest Nat'l Bank*, 874 F.2d 1177, 1185 (7th Cir. 1989) (district court may dismiss complaint *sua sponte* for failure to state a claim, but must give the parties notice and opportunity to respond). At that time, the court may reconsider whether it has jurisdiction over plaintiffs' remaining claims. Defendants' motion to dismiss for lack of subject matter jurisdiction will be granted only as to plaintiffs' due process claim.

**ORDER**

Defendants' motion to dismiss [#18] is granted in part and denied in part. Plaintiffs' motion to deny defendants' motion to dismiss [#23] is denied. Plaintiffs' due process claim is dismissed for lack of subject matter jurisdiction.

Plaintiffs have until August 1, 2012 to show cause as to why the following claims in their amended complaint, as currently pleaded, should not be dismissed with prejudice: violation of HEOPA, deceptive trade practices, fraud, intentional infliction of emotional distress, unfair lending practices, and breach of implied duty of good faith and fair dealing. Defendants' deadline to answer the complaint is stayed until such time as the court has considered any additional materials filed by plaintiffs. This case is scheduled for a show cause hearing on the court's order to show cause on August 23, 2012 at 8:30 a.m.

DATED: July 18, 2012            ENTER: *Joan N. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge