UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA SANCHEZ, a/k/a ) <br> MARIA SANCHEZ-ABARCA, and ) <br> JESUS URIOSTEGUI, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> ONEWEST BANK, FSB, and INDYMAC ) <br> BANK, FSB, JOHN DOE LOAN OWNER, ) <br> INC. ) <br> ) <br> Defendants. ) <br> ) | No. 11 CV 6820 <br><br> Judge Joan H. Lefkow |

## OPINION AND ORDER

Plaintiffs, Maria Sanchez and Jesus Uriostegui, filed a second amended complaint against Onewest Bank ("Onewest"), Indymac Bank ("IndyMac"), and "John Doe Loan Owner", (collectively referred to as "defendants") seeking damages for violation of the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*[1] On September 20, 2012, IndyMac[2] filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth herein, the motion will be granted.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1) a case will be dismissed if the court lacks the authority to hear and decide the dispute. Fed. R. Civ. P. 12(b)(1). The standard of review for

---

[1] Plaintiffs did not articulate a basis for subject matter jurisdiction but this court concludes that jurisdiction is proper under 28 U.S.C. § 1331.

[2] OneWest and IndyMac are now the same entity. Dkt. 25 at 1 n.1.

a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *See United Phorphorous, Ltd.* v. *Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc). If subject matter jurisdiction is not evident from the face of the complaint, the court analyzes the motion to dismiss under Rule 12(b)(1) as any other motion to dismiss and assumes for purposes of the motion that the allegations in the complaint are true. *Id*. Where, as here, however, "the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other materials to support the motion." *Id*.; *see also Sapperstein* v. *Hager*, 188 F.3d 852, 855–56 (7th Cir. 1999); *Long* v. *Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The court may weigh the evidence to determine whether jurisdiction has been established. *United Phosporous*, 322 F.3d at 946. The burden of proof is on the party asserting jurisdiction. *Id*.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *GE Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.  At the same time, the plaintiff need not plead legal theories.  *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).  Rather, it is the facts that count.

## BACKGROUND[3]

Plaintiffs initially sought damages for unfair lending practices, deceptive trade practices, breach of good faith and fair dealing, fraud, violation of their due process rights, RESPA, and the Home Ownership Equity Protection Act ("HOEPA") under 15 U.S.C. § 1639, and defendants moved to dismiss these claims.  On July 18, 2012, the court granted defendants' motion in part dismissing the due process claim and ordering plaintiffs to show cause as to why their remaining claims should not be dismissed without prejudice.  Plaintiffs filed a two-count second amended complaint alleging violation of RESPA and TILA.  Defendants filed a motion to dismiss arguing that plaintiffs claims are barred by the *Rooker-Feldman* doctrine and also fail to state a claim under either RESPA or TILA.

The subject of this lawsuit arises from a home previously owned by plaintiffs, which was subject to a mortgage serviced by IndyMac.[4]  In its capacity as a loan servicer, IndyMac acted as a third-party debt collector for the owner of the mortgage.  Plaintiffs' mortgage was executed on August 27, 2007.  IndyMac initiated foreclosure proceedings against plaintiffs in the Circuit Court of Cook County (Case No. 09 CH 22153), and on December 18, 2009, the Circuit Court entered a foreclosure judgment.  On March 11, 2011, the Circuit Court entered an order

---

[3] Unless otherwise noted, the facts in the Background section are taken from plaintiffs' second amended complaint and are construed in their favor.

[4] Plaintiffs allege in the alternative that IndyMac owned the note and the mortgage at the property.  Plaintiffs contend that they were without sufficient knowledge as to whether IndyMac serviced the mortgage or held the mortgage.  Plaintiffs additionally argue that John Doe Loan Owner, Inc. is unknown as a result of IndyMac's refusal to provide its identity.

approving the sale of the property.[5]

On March 31, 2011, plaintiffs sent IndyMac a letter, which they wrote served as a "qualified written request" under RESPA. In their letter, they requested information relating to the loan history including advances, charges, and fees in connection with the loan. Plaintiffs additionally requested

> [t]he full name, address and phone number of the current holder of this debt including the name, address and phone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth in Lending Act, which requires the servicer to identify the holder of the debt.

(Sec. Am. Comp. Ex. B.) On April 25, 2011, IndyMac responded to plaintiffs' letter providing that

> [y]our letter included a request for the investor of your loan. This debt has been charged off as a credit loss by Indymac Mortgage Services. Since we are no longer servicing this account as an active mortgage loan, the original investor information no longer applies. As such, we will be unable to provide the information requested.

(*Id*. Ex. A.) Plaintiffs allege that defendants' failure to comply with the requests in their March 31, 2011 letter violated RESPA and TILA.

## DISCUSSION

**I.     The *Rooker-Feldman* Doctrine**

Defendants first argue that the *Rooker-Feldman* doctrine precludes this court from exercising jurisdiction over plaintiffs' claims. The *Rooker-Feldman* doctrine, derived from the United States Supreme Court's decisions in *Rooker* v. *Fidelity Trust Company*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 2d 362 (1923) and *District of Columbia Court of Appeals* v. *Feldman*,

---

[5] The court takes judicial notice of the facts surrounding the foreclosure proceedings. *Ennenga* v. *Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.").

460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), stands for the principle that only the United States Supreme Court has appellate jurisdiction to reverse or modify a state court judgment. *Holt* v. *Lake Cnty. Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005). If the complained of injury resulted from a state court judgment then *Rooker-Feldman* applies;[6] however, *Rooker-Feldman* is inapplicable if the injury is distinct from the state court decision. *See Centres, Inc.* v. *Town of Brookfield, Wis.*, 148 F.3d 699, 702 (7th Cir. 1998).

Defendants rely on *Byrd* v. *Homecoming Financial Network*, 407 F. Supp. 2d 937, 943–44 (N.D. Ill. 2005), where the district court ruled that the *Rooker-Feldman* doctrine precluded, *inter alia*, the plaintiff's RESPA and TILA claims brought after the state court entered an order of foreclosure and approved the order confirming report of sale and order for possession after the foreclosure proceedings. *Id*. at 943. The district court reasoned that the plaintiff's allegations amounted to a "collateral attack" on the state court's judgment in the foreclosure proceedings. *Id*. Namely, the plaintiff alleged that the foreclosure actions were "wrongful." *Id*. The district court ruled that the plaintiff had a reasonable opportunity to raise her claims in the state court proceedings and that her federal complaint attempted to remedy the adverse state court judgment. *Id*. at 944. The district court thus applied the *Rooker-Feldman* doctrine and found that it had no subject matter jurisdiction over the plaintiff's claim. *Id*.

Here, however, plaintiffs' RESPA and TILA claims are independent from the Circuit Court's judgment in the foreclosure proceedings. They are not seeking to relitigate those

---

[6] The *Rooker-Feldman* doctrine also applies when a subsequent federal lawsuit is "inextricably intertwined" with a state court decision, *Epps* v. *Creditnet Inc.*, 320 F.3d 756, 759 (7th Cir. 2003), such that the federal court is "in essence being called upon to review the state-court decision." *Ritter* v. *Ross*, 992 F.2d 750, 754 (7th Cir. 1993).

foreclosure proceedings but rather are seeking damages for defendants alleged failure to properly respond to their March 31, 2011 letter under RESPA and TILA. The *Rooker-Feldman* doctrine thus does not preclude the court from exercising jurisdiction over these claims.

## II. The RESPA Claim

Plaintiffs allege that defendants are liable for damages for failing to timely respond to their March 30, 2011 letter, which they contend served as a "qualified written request" ("QWR") under RESPA. Defendants argue that plaintiffs' letter did not qualify as a QWR and that they are not liable under RESPA.

"RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." *Catalan* v. *GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011). RESPA places a duty on loan servicers[7] to respond to borrower inquiries. 12 U.S.C. § 2605(e). The receipt of a QWR triggers this duty at which time the loan servicer has 20 days to acknowledge receipt and 60 days to respond. 12 U.S.C. § 2605(e)(1)(A); (e)(2). A QWR is defined as

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought

---

[7] RESPA defines the term "servicing" as

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

6

by the borrower.

12 U.S.C. § 2605(e)(1)(B)(i); (ii).

Defendants argue that plaintiffs' March 31, 2011 letter cannot serve as a QWR because the property was already in foreclosure and had been sold pursuant to a judicial sale approximately three weeks earlier. In *Bilek* v. *Bank of America*, *N.A.*, No. 07 C 4147, 2011 WL 830948, at **5–6 (N.D. Ill. Mar. 3, 2011), the district court granted summary judgment in favor of the defendant on the plaintiffs' RESPA claim finding that the plaintiffs sent the alleged QWR when the mortgage was in foreclosure proceedings. The court reasoned that because the mortgage was in foreclosure and the plaintiffs had ceased making payments the defendant was no longer servicing the loan. *Id*. at *5. Here, the Circuit Court approved the judicial sale before plaintiffs sent their purported QWR. Even assuming that the March 31, 2011 letter constituted a QWR, IndyMac could not have been servicing the loan at that time because the Circuit Court had already approved the judicial sale. The court finds that IndyMac was not servicing plaintiffs' loan at the time of the March 31, 2011 letter and IndyMac thus had no obligation to respond under RESPA. Accordingly, the RESPA claim is dismissed.

## III. The TILA Claim

Plaintiffs also allege that defendants are liable for damages under TILA for failing to identify the name of the owner of the note and the mortgage. TILA requires "creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach* v. *Ocwen Fed. Bank*,

523 U.S. 410, 412, 118 S. Ct. 1408, 140 L. Ed. 2d 566 (1998). Pursuant to TILA, the servicer[8] of a mortgage shall, upon written request, provide the obligor "to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation." 15 U.S.C. § 1641(f)(2).[9] TILA does not provide a time period within which a request under § 1641(f)(2) must be answered. *Ording* v. *BAC Home Loans Servicing, LP*, Civ. No. 10-10670, 2011 WL 99016, at *3 (D. Mass. Jan. 10, 2011). The servicer must thus respond within a reasonable period of time. *Id*. (citing 12 C.F.R. § 226.36(c)(1)(iii)). "[A] violation of § 1641(f)(2) occurs, as some courts have sensibly concluded, either (i) after a 'reasonable time' has passed since the obligor sent a request without the servicer having sent any response, or (ii) when the servicer sends an inadequate response to that request." *Bradford* v. *HSBC Mortg.*

---

[8] Servicing is defined as "'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan [and] making the payments of principal and interest and other such payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.'" 12 U.S.C. § 2605(i)(3); *Hubbard* v. *Ameriquest Mortg. Co.*, 624 F. Supp. 2d 913, 918 (N.D. Ill. 2008) (citing 12 U.S.C. § 2605(i)(2) & (3) (cross-referenced in 15 U.S.C. § 1641(f)(3)).

[9] The Seventh Circuit has not addressed vicarious liability, *i.e.*, whether an owner of a mortgage can be liable for the actions of a loan servicer under § 1641(f)(2). TILA created a private right of action against "any creditor who fails to comply with any requirement imposed . . . under subsection (f) . . . of section 1641." 15 U.S.C. § 1640(a). Under TILA, a creditor is "the person to whom the debt arising from the consumer credit transaction is initially payable." *Id*. § 1602(g). A loan servicer is not liable under TILA "unless the servicer is or was the owner of the obligation." *Id*. § 1641(f)(1). Some courts have found creditors liable under agency law for a servicer's violation of § 1641(f)(2). *Khan* v. *Bank of N.Y. Mellon*, 849 F. Supp. 2d 1377, 1380 (S.D. Fl. 2012) ("There is very limited case law on the issue to date; however, it appears that the trend is towards imposing vicarious liability on creditors rather than denying it."); *but see Holcomb* v. *Fed. Home Loans Mortg. Corp.*, Civ. No. 10-81186-CIV, 2011 WL 5080324, at **6–7 (S.D. Fl. Oct. 26, 2011) (ruling that § 1641(f)(2) does not impose vicarious liability). Plaintiffs pleaded alternative theories of liability against IndyMac alleging that it was the servicer of their loan, or in the alternative, was the owner. The court need not decide whether IndyMac is liable as a servicer or an owner, or whether John Doe Loan Owner, Inc. is vicariously liable for IndyMac's actions because it finds that IndyMac did not need to respond to the TILA request.

*Corp.*, 829 F. Supp. 2d 340, 352 (E.D. Va. 2011).[10]

In their March 31, 2011 letter, plaintiffs requested information regarding the owner of their mortgage pursuant to TILA. (Sec. Am. Compl. Ex. B.) As discussed *supra* in Section II, at the time of this request, IndyMac was no longer servicing the mortgage. In addition, on April 25, 2011, IndyMac responded to plaintiffs' letter confirming that it was no longer servicing plaintiffs' account. (*Id*. Ex. A.) Plaintiffs did not respond to IndyMac's motion to dismiss and do not argue that IndyMac's April 25, 2011 response was insufficient under TILA. Because the Circuit Court had already approved the judicial sale, the court finds that IndyMac was no longer servicing the loan on March 31, 2011. IndyMac was not "receiving any scheduled periodic payments from [plantiffs]" or "making the payments of principal and interest" at that time. 12 U.S.C. § 2605(i)(2) & (3); 15 U.S.C. § 1641(f)(3); *see Daw* v. *Peoples Bank & Trust Co.*, 5 Fed. App'x 504, 505 (7th Cir. 2001) ("Once [the plaintiff] defaulted, there were no longer any scheduled periodic payments to make or to collect[.]"). The TILA claim is thus dismissed.

---

[10] Defendants argue that TILA claims seeking rescission are subject to a three-year statute of repose and that plaintiffs' TILA claim is time barred. *See* 15 U.S.C. § 1635(f); *Beach*, 523 U.S. at 417. Plaintiffs, however, seek damages and not rescission, and damage claims are subject to a one-year statute of limitations. 15 U.S.C. § 1640(e). While plaintiffs filed their amended complaint over a year after receiving defendants' April 25, 2011 letter, defendants do not contend that they filed their TILA claim outside the one-year time period. Indeed, their TILA claim would likely relate back to their original complaint filed within that one-year window. *See* Fed. R. Civ. P. 15(c).

## CONCLUSION

Defendants' motion to dismiss plaintiffs' second amended complaint is granted with prejudice.

Dated: January 10, 2013             Enter: _____
                                                                           JOAN HUMPHREY LEFKOW
                                                                           United States District Judge